UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| FREDERICK J. COLEMAN, | ) |
| Petitioner, | ) |
| v. | ) Case No. 4:17-cv-04270-SLD-JEH |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

ORDER

Before the Court are Petitioner Frederick J. Coleman's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("2255 Motion"), ECF No. 1; motion for status, ECF No. 11; motion to amend, ECF No. 12; and motion to provide supplemental authorities, ECF No. 15. For the reasons that follow, the 2255 Motion and the motion to amend are DENIED, and the motion for status and motion to provide supplemental authorities are MOOT.

BACKGROUND[1]

A criminal complaint filed on March 26, 2012 alleged that Coleman and Jerry Brown had been conspiring to distribute crack cocaine in Henry County, Illinois in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and § 846 since December 2010. Compl., Cr. ECF No. 1. On April 18, 2012, the grand jury returned an indictment charging Brown, Coleman, Darrion Capers, Nicholas Clark, and James Tatum with conspiracy to distribute at least 280 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and § 846. Indictment 1–2, Cr. ECF No. 9. A

---

[1] Citations to Coleman's underlying criminal case, *United States v. Coleman*, No. 4:12-cr-40031-SLD-JEH-1, take the form: Cr.__.

1

superseding indictment adding another co-conspirator was filed on August 22, 2012. Superseding Indictment 1, Cr. ECF No. 65.

Attorney Anthony Vaupel was appointed to represent Coleman. *See* Cr. June 25, 2012 Min. Entry. Coleman, Brown, Capers, and Clark (collectively, "Defendants" or "Co-Defendants") went to trial. *See, e.g.*, Cr. May 13, 2013 Min. Entry. They were all found guilty of conspiracy to distribute and possess at least 280 grams of crack cocaine. *See generally* Verdicts, Cr. ECF No. 195. On February 13, 2014, Coleman was sentenced to life imprisonment, Judgment 1–2, Cr. ECF No. 257, because he had at least two prior drug felony convictions, *see* Revised Presentence Investigation Report ¶¶ 4, 113, Cr. ECF No. 221; Sentencing Hr'g Tr. 51:9–11, Cr. ECF No. 288; 21 U.S.C. § 841(b)(1)(A) (effective Aug. 3, 2010 to Dec. 20, 2018) (providing that an individual convicted under § 841(b)(1)(A) "shall be sentenced to a mandatory term of life imprisonment" if he commits the crime after "two or more prior convictions for a felony drug offense have become final").

He appealed. Not. Appeal, Cr. ECF No. 260. Vaupel continued to represent Coleman on appeal, *see* 2255 Mot. 11, though he moved to withdraw after oral argument because he had been appointed as a state court judge, *see* Mot. Withdraw ¶ 4, *United States v. Coleman*, No. 14-1364 (7th Cir.) (Doc. 94). On appeal, Coleman challenged some of the Court's evidentiary rulings from trial, argued that he did not receive due process because of the cumulative of effect of trial errors, and argued that his life sentence was improper because "a jury did not find the existence of [his] prior felonies." *United States v. Brown*, 822 F.3d 966, 971, 975, 976 (7th Cir. 2016). The Seventh Circuit rejected those arguments and affirmed both his conviction and sentence. *Id.* at 971–76, 978. The court said the following about the evidence presented against Defendants at trial:

2

> [T]he evidence of their guilt was overwhelming. It included testimony from more than a dozen witnesses who purchased crack cocaine or worked with the defendants and knew the day-to-day operations of the conspiracy, eight controlled buys monitored by law enforcement, and phone records and recorded jail calls in which members of the conspiracy plotted to cover up and maintain the conspiracy after their arrest.

*Id.* at 973. Coleman filed a petition for a writ of *certiorari* from the United States Supreme Court, which was denied on October 3, 2016. *Coleman v. United States*, 137 S. Ct. 247 (2016) (mem.).

Coleman filed his 2255 Motion on September 21, 2017. 2255 Mot. 13 (declaring that he put his motion in the prison mailing system on September 21, 2017); *see* Rule 3(d), Rules Governing § 2255 Proceedings ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."). He claims he received ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution in at least four ways. *See* 2255 Mot. 5–9. Coleman also submitted exhibits, *see* Exs., ECF No. 3 at 3–10, and a memorandum in support of his 2255 Motion, Mem. Supp., ECF No. 3-3. The Government opposes the 2255 Motion. Resp. 1, ECF No. 8. Coleman filed a reply in support of his motion. Reply, ECF No. 10.

Coleman later filed a motion to amend his 2255 Motion to add a claim that counsel was ineffective for failing to object to the sentencing enhancement for Coleman's prior convictions on the basis that those convictions did not qualify as felony drug convictions under § 841(b)(1)(A) and failing to pursue a plea agreement that would dismiss the sentencing enhancement. *See* Mot. Amend. 3. Coleman then filed a motion for leave to alert the Court to supplemental authorities in support of that claim. Mot. Suppl. Authorities 1. At the Court's direction, *see* Sept. 29, 2021 Text Order, the Government responded, opposing the motions. *See* Resp. Mot. Amend & Mot. Suppl. Authorities, ECF No. 18. With the Court's permission, *see*

Nov. 23, 2021 Text Order, Coleman filed a reply in support, Reply Mot. Amend & Mot. Suppl. Authorities, ECF No. 20.

## DISCUSSION

I.   2255 Motion

   A. Legal Standards

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it. 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. U.S. Const. amend. VI. Claims of ineffective assistance of counsel are subject to the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). This test requires a petitioner to show that his counsel's performance "fell below an objective standard of reasonableness" and that he suffered prejudice as a result. *Id.* at 688, 692. The court applies "a strong presumption that decisions by counsel fall within a wide range of reasonable trial strategies." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotation marks omitted). The petitioner "must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged

4

action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). To demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### B. Analysis

Coleman's allegations and arguments are often difficult to understand and repetitive, but the Court finds that he is making four claims of ineffective assistance of counsel. First, he alleges that counsel did not inform him that the Government had filed a notice pursuant to 21 U.S.C. § 851 indicating that he would be subject to life imprisonment and that he "would have never went to trial" if counsel had shown him the § 851 notice and if counsel had not guaranteed that he would win at trial. 2255 Mot. 5, 8.[2] Second, he alleges that counsel failed to investigate and present evidence that would support a finding that a Government witness, Dorian Thompson, had perjured himself. *Id.* at 6. Third, he alleges that counsel "failed to read any F.B.I. discovery, fail[ed] to consult and failed to present a defen[s]e at trial by allow[ing] witnesses to present false testimony." *Id.* at 7–8 (capitalization altered). This claim appears to be focused on a failure to cross-examine and impeach Government witnesses Thompson, Melinda Blanks, and

---

[2] In his memorandum in support of his 2255 Motion, Coleman also alleges that "the Court failed to give [him] a 21 U.S.C. 851(b) hearing pursuant to [his] prior predicate convictions." Mem. Supp. 7 (capitalization altered). It is unclear how this relates to his ineffective assistance of counsel claim because he does not allege that counsel failed to ensure that the Court gave him the required hearing. In any case, the claim is belied by the record. 21 U.S.C. § 851(b) requires a court to, "after conviction but before pronouncement of sentence[,] inquire of the person with respect to whom [a § 851 notice] was filed whether he affirms or denies that he has been previously convicted as alleged in the [notice]." At the sentencing hearing, the Court asked Coleman's counsel: "Mr. Vaupel, on behalf of Mr. Coleman, does he affirm or deny that he was previously convicted as challenged in the [notice] by the [G]overnment?" Sentencing Hr'g Tr. 38:25–39:3. Counsel responded that Coleman denied that he was previously convicted as challenged in the § 851 notice. *Id.* at 39:4, 11. The Court then allowed counsel to make a legal argument challenging the sentencing enhancement. *See id.* at 47:6–48:14. The Court noted that because the convictions occurred more than five years prior to when the initial § 851 notice was filed, Coleman was "barred from challenging the evidentiary basis for the 851 enhancement." *Id.* at 49:18–25 (relying on 21 U.S.C. § 851(e)). The Court then denied counsel's legal arguments against the sentencing enhancement, *id.* at 50:1–51:9, and concluded that Coleman was "statutorily required to be sentenced to mandatory life," *id.* at 51:10–11. Thus, the Court did conduct the required inquiry and counsel did not fail to request the hearing.

Loretta Empson. Mem. Supp. 14–17. Somewhat related to this claim is his allegation that counsel was ineffective for failing to give him discovery, grand jury statements, police reports, and trial transcripts. *Id.* at 17–18. Fourth, Coleman alleges that counsel failed to read grand jury testimony, discovery, and trial testimony which would show that Empson offered false testimony, too. 2255 Mot 9. The Court addresses each claim in turn.[3]

### i. 21 U.S.C. § 851 Enhancement and Going to Trial

At the time Coleman was sentenced, 21 U.S.C § 841(b)(1)(A) generally imposed a mandatory minimum sentence of ten years of imprisonment, but if the person convicted under that provision had "two or more prior convictions for a felony drug offense," he faced a mandatory life sentence. *Id.* (effective Aug. 3, 2010 to Dec. 20, 2018). For the enhanced mandatory minimum under § 841 to apply, the Government was required to "before trial . . . file[] an information with the court (and serve[] a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1). The Government filed such an information, or § 851 notice, on May 10, 2013. Not. Intent Rely, Cr. ECF No. 178. It indicated that the Government would seek an enhanced sentence because Coleman had seven prior felony drug convictions. *Id.* at 1–2. After trial, but before sentencing, the Government filed an amended notice, correcting some dates and case numbers and removing one listed conviction. *See* Am. Not. Intent Rely 2, Cr. ECF No. 227.

Coleman contends that counsel never informed him of the initial § 851 notice and that he "would have never went to trial if" he had been aware of the notice. 2255 Mot. 5 (capitalization

---

[3] While generally the Court would consider the cumulative effect of the claims, it is unnecessary to do so here because the Court does not find multiple instances of deficient performance. *Cf. Myers v. Neal*, 975 F.3d 611, 623 (7th Cir. 2020) ("Where, as here, the record shows more than one instance of deficient performance, the Sixth Amendment requires that we approach the prejudice inquiry by focusing on the cumulative effect of trial counsel's shortcomings.").

altered).  He also briefly elsewhere suggests that he would not have gone to trial if counsel "would have not guarantee[d] [him] that he would win at trial." *Id.* at 8 (capitalization altered). The Government responds that Coleman was advised by the Court at his arraignment that he would likely be subject to a mandatory life sentence, that Coleman's counsel in fact did inform Coleman that he was facing a mandatory life sentence, and that Coleman's counsel did not guarantee Coleman that he would win at trial.  Resp. 21–23.

The Court need not address both the prejudice and performance prongs of *Strickland* if it concludes Coleman cannot establish one. *See Taylor v. Bradley*, 448 F.3d 942, 949 (7th Cir. 2006).  And here, the Court concludes that Coleman has shown no prejudice from his counsel's alleged errors.  First, even if counsel did not specifically inform Coleman about the § 851 notice, the Government stated at Coleman's arraignment, with Coleman present, that it "w[ould] be filing an 851 penalty enhancement for mandatory life imprisonment" based on its understanding that Coleman "d[id] have two or more prior drug felonies."  Arraignment Tr. 3:25–4:3, Cr. ECF No. 416.  The Court then asked Coleman whether he understood that he "very likely face[d] a mandatory minimum of life in prison," to which he responded, "Yes, ma'am." *Id.* at 4:5–10. Counsel's alleged failure to show Coleman the § 851 notice, therefore, did not deprive Coleman of notice that he was facing a mandatory life sentence.[4]

Second, Coleman has not demonstrated that his sentence could have been anything less than life imprisonment.  To the extent Coleman is suggesting that he would have pleaded guilty rather than going to trial—either because he was not aware of the § 851 notice or because counsel misled him into believing he would win at trial—he fails to show that he would have had

---

[4] Moreover, in the affidavit Coleman submitted in support of his motion to amend, he contradicts his claim that counsel never told him about the § 851 notice. *See* Aff. Supp. Mot. Amend ¶ 3, ECF No. 12 at 14–16 (acknowledging that counsel told him "that because [he] had prior convictions from the State of Illinois [he] qualified for enhancement purposes pursuant to 21 U.S.C. § 851").

7

a better outcome from pleading guilty.  *Cf. Lafler v. Cooper*, 566 U.S. 156, 164 (2012) (holding that where an attorney's ineffective advice leads a defendant to reject a plea offer and stand trial the "defendant must show that but for the ineffective advice of counsel there is a reasonable probability that" a plea offer would have been presented to and accepted by the court and "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed").  Counsel declares that the Government offered Coleman a cooperation plea agreement but was unwilling to waive the § 851 enhancement.  *See* Vaupel Aff. ¶ 3(a)(3), ECF No. 8-1.  Counsel declares that Coleman rejected that offer, *id.* ¶ 3(a)(4), but Coleman contends that counsel never informed him about the offer, *see* Reply 2.[5]  A cooperation agreement could potentially have led to a lesser sentence, *see* 18 U.S.C. § 3553(e), but Coleman provides no specific allegations from which the Court could find that the Government would have made the same offer at the time Coleman desired to plead guilty or that he would have accepted the offer if he knew about it (let alone that he would have actually cooperated with the Government in hopes of receiving a lesser sentence).  And because he was subject to a statutorily mandated life sentence, an open plea to the charges against him—*i.e.*, not pursuant to a plea agreement with the Government—would have resulted in the same sentence: life imprisonment.

In sum, even if counsel performed deficiently by failing to inform Coleman of the § 851 notice filed before Coleman went to trial and by guaranteeing that Coleman would win at trial, Coleman has shown no prejudice, and therefore cannot succeed on a claim of ineffective assistance of counsel on this basis.

---

[5] Coleman contradicts his claim that he never knew about the offer in the affidavit in support of his motion to amend.  *See* Aff. Supp. Mot. Amend ¶ 2 ("I rejected the plea offer . . . .").

### ii. Dorian Thompson's Alleged Perjury

Next, Coleman alleges that counsel was ineffective because he "failed to investigate, and failed to present a defense at trial[,] that resulted in the Government" suborning perjury from Thompson which went uncorrected and affected the jury's decision. Mem. Supp. 10 (capitalization altered). Thompson testified at trial that he met Coleman after he was released from jail in 2008. Trial Tr. Volume 3 87:10–12, Cr. ECF No. 338. Coleman contends that he and Thompson knew each other in 2004 when they "caught a[n] incident report []together[]" at Hill Correctional Center. Mem. Supp. 10 (capitalization altered). He argues that counsel should have obtained this incident report which would have proved that Thompson's testimony was perjured. *Id.* at 10–13. The Government responds that counsel did investigate this issue and "obtained 'a few records from Hill Correctional Center,' but was 'never able to obtain a document or report which state[d] Mr. Coleman and Mr. Thompson were both at Hill Correctional Center at the same time.'" Resp. 24 (quoting Vaupel Aff. ¶ 3(c)(3)). Coleman responds with documentation that his Bureau of Prisons case manager contacted Hill Correctional Center and was informed that a subpoena would be necessary to get the incident report, *see* June 30, 2018 Email, Reply Ex. A, ECF No. 10 at 6, and argues that counsel's failure to request a subpoena prejudiced him, Reply 3.

Coleman's claim raises two somewhat discrete issues: first, the issue of uncorrected perjury; and second, counsel's duty to investigate. *See* Mem. Supp. 10. As to perjury, a defendant's due process rights are violated if the government knowingly allows false testimony to go uncorrected at trial. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). Presumably, Coleman is claiming his counsel should have objected to Thompson's testimony on the basis that the Government had violated its obligation to correct Thompson's allegedly false testimony. But

9

even if Thompson's testimony were false, the Court has no reason to believe the Government knew that; Coleman does not allege, for example, that the Government had access to the incident report he claims exists or some other source which showed that Thompson in fact met Coleman in 2004 rather than 2008. *See Kirkman v. Thompson*, 958 F.3d 663, 666 (7th Cir. 2020) ("[P]erjured testimony unknowingly presented does not violate due process."). Counsel therefore did not perform deficiently by failing to object to Thompson's testimony on this basis.

As to investigations, "[c]ounsel has an obligation either to investigate possible defenses or make reasonable decisions that particular investigations are unnecessary." *Burt v. Uchtman*, 422 F.3d 557, 566 (7th Cir. 2005). Here, the record shows that counsel *did* investigate Coleman's claim regarding the year he and Thompson met but was unable to find the record Coleman claims exists.[6] Accordingly, counsel did not perform deficiently by failing to investigate this possible defense.

Even if he could show deficient performance, Coleman has not shown prejudice from these alleged errors. Had Thompson's testimony been stricken, there was still ample evidence of Coleman's guilt: witness testimony about Defendants' drug dealing enterprise, testimony about numerous controlled buys from law enforcement and informants, phone records, and wire transfer records. Had counsel obtained the incident report from Hill Correctional Center and used it to impeach or cross-examine Thompson, the jury could have either disbelieved Thompson

---

[6] Coleman points to various exhibits which he appears to suggest show the record he wants counsel to have obtained exists. *See* Coleman Offender Custody History, Mem. Supp. Ex. 2, ECF No. 3 at 4; Authorization for Release of Offender Master Record File, Mem. Supp. Ex. 3, ECF No. 3 at 5; June 30, 2018 Email. All these exhibits show, however, is that *Coleman* was admitted to Illinois Department of Corrections ("IDOC") custody in February 2003 and paroled out in December 2003 from Hill Correctional Center and that he was readmitted to IDOC custody in October 2004 and was discharged from Hill Correctional Center on May 5, 2005, Coleman Offender Custody History 1; that he authorized IDOC to release his master record file to counsel in 2014, Authorization for Release of Offender Master Record File 1; and that someone from Hill Correctional Center sent an email to someone in June 2018 stating that a subpoena is necessary for IDOC to release records, June 30, 2018 Email.

10

entirely—in which case there was still significant evidence against Coleman—or simply believed they met later than he testified.

Coleman cannot establish deficient performance or prejudice and therefore cannot succeed on a claim of ineffective assistance of counsel on this basis.

### iii. Investigation and Cross-Examination

Next, Coleman argues that counsel was ineffective because he failed to investigate and cross-examine Government witness Melinda Blanks at trial, failed to investigate and read discovery in order to cross-examine Government witness Loretta Empson, and failed to investigate and cross-examine Thompson. Mem. Supp. 14–17. The Government responds that Coleman's "claims are all unsupported by the record and [he] provides no evidence to support" them. Resp. 26. It argues that even if Coleman could show that Blanks, Empson, and Thompson provided inconsistent statements, he "cannot show that the outcome of the trial would have been different." *Id.*

As to Thompson, the claim is easily resolved. Coleman argues that counsel should have cross-examined Thompson regarding whether he and Coleman met earlier than 2008 as Thompson testified. *See* Mem. Supp. 17. The Court has already found that counsel did not perform deficiently because he attempted to find a record showing that Coleman and Thompson knew each other before 2008 and that Coleman has failed to show prejudice. *See supra* Section I(B)(ii).

The claim as to Blanks fails as well. Blanks testified that Brown "was kind of like a boyfriend" to her and that Brown and Coleman were her two of her crack suppliers. Trial Tr. Volume 7 1368:2–4, 1379:6–12, Cr. ECF No. 342. She also testified that she sometimes transported her suppliers to make drug transactions. *Id.* at 1391:22–1392:5, 1402:12–1403:3.

She testified about one such occasion in late 2011 or early 2012 when she drove Brown to Chicago, and they stopped at a Wendy's. *Id.* at 1403:17–1404:9, 1404:24–25. She testified that she and Brown "ordered . . . food and parked and ate while [they] waited for [Coleman's] mother to come." *Id.* at 1404:13–14. Coleman's mother "was putting groceries in the car, and [Blanks] just so happened to turn around" and saw Coleman's mother giving Brown "a bag of crack" in exchange for money. *Id.* at 1405:3–10. Coleman suggests that Blanks drove a Dodge Caravan, provides the Court with a picture that purports to be the back of a Dodge Caravan, *see* Mem. Supp. Ex. 5, ECF No. 3 at 7, and argues that counsel should have cross-examined Blanks about how she could have seen anything occurring in the back of the car because the back seats would have blocked her view. Mem. Supp. 14–15. But Blanks did not testify that she drove a Dodge Caravan. The Court cannot find counsel performed deficiently by failing to ask additional questions based on mere speculation. And Coleman certainly cannot establish prejudice from this alleged error. Even if the jury discounted some or all of Blanks's testimony, there was still ample evidence of Coleman's guilt.

      The claim fails as to Empson, too. Empson testified that she had bought crack from Defendants. *See* Trial Tr. Volume 4 391:9–11, Cr. ECF No. 339 (Coleman); *id.* at 393:12–14 (Brown); *id.* at 395:13–15 (Clark); *id.* at 396:8–10 (Capers). She also testified that she would give Defendants rides to drug transactions. *Id.* at 417:5–10. Specifically, she testified about a December 2011 trip to the Quad Cities she took with Clark and Coleman. *Id.* at 420:7–15. She testified that they got a motel room and then left the next day. *See id.* at 422:1–24. She said she did not see crack at the motel, "but when [they] were leaving the hotel to [go] back to Kewanee, [Clark] had a bag of crack . . . and told [her], Here, Mama, hang onto it." *Id.* at 424:9–14. Coleman argues that in some unspecified police report, Empson said that it was Coleman who

12

had the crack, not Clark.  Mem. Supp. 15.  Absent more specific information regarding Empson's alleged statement to police—which police entity it was made to, the approximate date of the statement, etc.—Coleman has not adequately alleged that she made an inconsistent statement at trial and that counsel should have impeached her with her prior statement or cross-examined her regarding who she saw holding crack.  *Cf. Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015) ("[A] hearing is not necessary if the petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than detailed and specific." (quotation marks omitted)).  And even if Coleman could establish deficient performance, he cannot establish prejudice.  Even if the jury discounted some or all of Empson's testimony, ample evidence of his guilt remained in the record.

In his memorandum, Coleman also argues that counsel was ineffective for failing to give him discovery, grand jury statements, police reports, and trial transcripts.  *See* Mem. Supp. 17–18.  Counsel attests that he made a request for Coleman to be given a copy of the trial transcripts at the jail he was housed at, but that request was denied.  Vaupel Aff. ¶ 3(e)(8)–(9); *see* Mot. Provide Transcripts, Cr. ECF No. 215; Cr. Sept. 19, 2013 Min. Entry.  Nevertheless, Coleman was given the opportunity to review his transcripts while in custody of the United States Marshals.  Vaupel Aff. ¶ 3(e)(11); Cr. Sept. 19, 2013 Min. Entry.  The Court will not find that counsel performed deficiently where he arranged for Coleman to review his transcripts and requested that he be given the transcripts.  Moreover, Coleman acknowledges that he was provided an electronic copy of his trial transcripts in 2016, prior to filing his 2255 Motion.  *See* Mem. Supp. 18; Apr. 28, 2016 Hills Letter, Mem. Supp. Ex. 7, ECF No. 3 at 10.  Thus, the Court fails to see how Coleman was prejudiced.

With respect to discovery materials, the Local Rules prohibited discovery materials being left in the possession of defendants. *See* CDIL-LR Crim. 16.2(B)(3) (effective Oct. 20, 2017 to Sept. 12, 2021). Moreover, counsel was precluded from providing Coleman with a copy of discovery materials by a discovery agreement with the Government. Resp. 30; *see* Vaupel Aff. ¶ 3(e)(3). The Court will not find that counsel performed deficiently by refusing to violate Local Rules and his agreement with the Government by providing Coleman with discovery materials.[7]

### iv. Empson's Alleged Perjury

Lastly, Coleman argues counsel was ineffective for failing to read discovery and police statements which would show that Empson provided false testimony that went uncorrected. *See* Mem. Supp. 20. He is referring again to her testimony at trial that Clark had crack, whereas she allegedly stated to police that Coleman had crack. *Id.* at 20–21. Again, Coleman's allegations are not specific enough to warrant a hearing regarding this issue. *See Martin*, 789 F.3d at 706. Moreover, the Court does not have sufficient information from which it could find that the Government knew Empson's testimony was false and failed to correct it. And even if Empson's testimony was stricken, Coleman can show no prejudice. There was ample other evidence of Coleman's guilt.

### v. Evidentiary Hearing

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the . . . record[] . . . conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). This means that "a district court *must* grant an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle him to relief." *Kafo v. United States*, 467

---

[7] Coleman suggests that the fact that his new counsel sent him transcripts shows his original counsel misled him when he said he could not provide discovery to him. *See* Mem. Supp. 17–18. But discovery is not the same as court transcripts.

F.3d 1063, 1067 (7th Cir. 2006) (quotation marks omitted). No hearing is required, however, "if the petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than detailed and specific." *Martin*, 789 F.3d at 706 (quotation marks omitted). The claims asserted in the 2255 Motion are either belied by the record or supported by merely vague and conclusory allegations. Accordingly, no hearing is required.

II.     **Motion to Amend and Motion to Provide Supplemental Authorities**

Coleman moves to amend his 2255 Motion to include a claim that counsel was ineffective for failing to adequately research whether Coleman's prior convictions qualified him for the § 851 enhancement, leading to an improper sentence and hampered plea negotiations. Mot. Amend 3. He argues that the prior drug convictions relied on for the enhancement were Illinois cocaine offenses and that they do not qualify as felony drug offenses because Illinois law defines cocaine more broadly than federal law. *Id.* at 4–7. The Government contends that these motions should be dismissed because the additional claims are time-barred, Resp. Mot. Amend 1, and unmeritorious, *id.* at 9–10.

"Because the Rules Governing Section 2255 Proceedings . . . do not deal with amendments to motions for collateral review," district courts rely on Federal Rule of Civil Procedure 15 to determine whether to grant a motion to amend. *Johnson v. United States*, 196 F.3d 802, 805 (7th Cir. 1999). Pursuant to Federal Rule of Civil Procedure 15(a), the court should grant leave to amend "freely . . . when justice so requires." But "[a] district court may properly deny a motion to amend as futile if the proposed amendment would be barred by the statute of limitations." *Rodriguez v. United States*, 286 F.3d 972, 980 (7th Cir. 2002). New claims in a proposed amended § 2255 must either "independently meet the statute of limitation" or relate back to the filing of the original motion. *Riney v. United States*, No. 15-3783, 2017 WL

15

3426473, at *1 (7th Cir. Feb. 10, 2017) (citing *Mayle v. Felix*, 545 U.S. 644 (2005)); *Rodriguez*, 286 F.3d at 981 (noting that the petitioner's original claim was filed within the deadline but the claim in his motion to amend was filed after the 2255 deadline expired, then proceeding to discuss whether the new claim related back to the original motion).

A one-year statute of limitations applies to all federal habeas claims, but there are four potential accrual dates. *See* 28 U.S.C. § 2255(f). Here, Coleman is not asserting that he was unable to raise his claims because of a government-made impediment, *see id.* § 2255(f)(2), a claim based on a new right recognized by the Supreme Court, *see id.* § 2255(f)(3), or a claim based on new facts that were not discovered until recently, *see id.* § 2255(f)(4).[8] Thus, the only accrual date that applies is "the date on which the judgment of conviction becomes final." *Id.* § 2255(f)(1). Coleman's judgment of conviction became final on October 3, 2016 when the Supreme Court denied his petition for a writ of *certiorari*. As the motion to amend was not filed until 2019, *see* Mot. Amend 1, the additional ineffective assistance of counsel claims set forth in the motion to amend are untimely unless they relate back to the original 2255 Motion.

"In order for an untimely claim to relate back, it must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type." *Rodriguez*, 286 F.3d at 981 (quotation marks omitted). Courts have uniformly denied amendments "that would add a new claim or theory of relief." *Id.* (collecting cases). "[R]aising ineffective assistance of counsel claims in both the original § 2255 motion and amended § 2255

---

[8] Coleman briefly argues that his motion to amend was filed within a year "of the date on which the facts supporting his claims presented could have been discovered through the exercise of due diligence." Reply Mot. Amend 3. The new facts he seems to be referencing come from a 2019 Seventh Circuit case. *See id.* But new court cases are not new facts for purposes of § 2255(f)(4). *See Lo v. Endicott*, 506 F.3d 572, 575–76 (7th Cir. 2007); *Whiteside v. United States*, 775 F.3d 180, 183 (4th Cir. 2014).

motion, standing alone, is not sufficient to show relation back." *Jackson v. United States*, No. 1:18-cv-032292-SEB-MPB, 2020 WL 4261742, at *2 (S.D. Ind. July 22, 2020).

The Government contends that Coleman's new claims are based on "separate conduct supported by different facts and actions of counsel than those set forth in Coleman's original motion." Resp. Mot. Amend & Mot. Supplemental Authorities 5.  It acknowledges that Coleman did set forth an ineffectiveness of counsel claim related to the § 851 notice in his original motion but argues that "the fact that the claims relate to a single pleading do not make them arise out of the same facts." *Id.* at 6.

Though the new and original claims, broadly speaking, challenge counsel's conduct with respect to the § 851 notice, the claims rest on distinct types of attorney misfeasance and are supported by different facts, so the Court finds the new claims do not relate back to the original 2255 Motion.  *See Cruz v. United States*, Case No. 15-cv-3188, 2017 WL 3070843, at *10 (N.D. Ill. July 19, 2017) ("[A] petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." (alteration in original) (quoting *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005)); *cf. id.* at *11 ("[T]he only similarity between his original and amended claim is that they both, at times, touch on issues regarding the same element—intent.  But that does not mean these claims are based on the same facts . . . ." (emphasis omitted)).  While the original petition contained a claim centered on an alleged failure to inform Coleman of the § 851 notice prior to Coleman's decision to go to trial, the new claims center on substantive failures of counsel throughout case preparation, client counseling, plea negotiations, and at sentencing.  The allegations supporting the original claims were that counsel failed to inform Coleman of the

§ 851 notice before he decided to take his case to trial, that Coleman was not aware that he was subject to mandatory life imprisonment, and that Coleman would have pleaded guilty if he knew about the enhancement. *See, e.g.*, Mem. Supp. 7 (alleging that counsel "failed to inform Mr. Frederick Coleman of the Government 21 U.S.C. 851[] enhancement" (capitalization altered)); 2255 Mot. 5 ("Mr. Frederick Coleman would have never went to trial if the trial counsel Mr. Anthony Vaupel would have showed him this document." (capitalization altered)). The allegations supporting the new claims are that counsel failed to research Coleman's prior convictions and whether they qualified as felony drug convictions, failed to object to the enhancement at sentencing, failed to inform Coleman of the definition of felony drug offense so that Coleman could research the issue himself, and failed to restart plea negotiations based on the understanding that the § 851 enhancement was improper. *See, e.g.*, Mot. Amend 3–11; Aff. Supp. Mot. Amend ¶¶ 3–9, ECF No. 12 at 14–16. Thus, the new and original claims are not "tied to a common core of operative facts." *Mayle*, 545 U.S. at 664.

   Further demonstrating that these claims are supported by different facts, Coleman contradicts many of the facts alleged in the original briefing on the 2255 Motion in the motion to amend. For instance, though he claimed in his reply to the Government's response to the 2255 Motion that he had never been informed of a plea offer, Reply 2, he now claims that he "rejected the one plea offer in this case because the [Government] was unwilling to waive the filing of the § 851 enhancement," Mot. Amend 9. And though Coleman previously claimed he was not aware of the filing of an § 851 notice or that the Government was trying to use his prior convictions to enhance his sentence, Mem. Supp. 7–8, he now claims that his counsel did tell him about the § 851 enhancement, Aff. Supp. Mot. Amend ¶ 3 (acknowledging that counsel told him that

"because [he] had prior convictions from the state of Illinois [he] qualified for enhancement purposes pursuant to 21 U.S.C. § 851" (capitalization altered)).

The new claims do not elaborate on Coleman's original claims or recharacterize them as violations of different rights, *Compton v. United States*, Civil No. 10-632-GPM, Criminal No. 04-30139-GPM, 2012 WL 5499436, at *15 (S.D. Ill. Nov. 13, 2012) (finding that a new claim that added additional detail to and recharacterized an earlier claim as a violation of confrontation clause rights instead of a *Brady* violation related back to the filing of the original motion under 28 U.S.C. § 2255); instead, they contradict Coleman's original claims and are based on a new theory of deficient performance. Thus, they do not relate back to the filing of the original 2255 Motion and the motion to amend is denied because the proposed amendments are untimely.

### III.    Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability. Rule 11(a), Rules Governing § 2255 Proceedings. A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the "court denies a habeas [claim] . . . on procedural grounds without reaching the prisoner's underlying constitutional claim," the court may grant a certificate of appealability only if the petitioner makes a substantial showing of the denial of a constitutional right and "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As to the claims in the original 2255 Motion, the Court finds that Coleman has failed to make a substantial showing of the denial of a constitutional right and therefore declines to issue a certificate of appealability. With respect to the ineffective assistance of counsel claims asserted in the motion to amend, the Court finds both that Coleman has made a substantial showing of the

denial of his Sixth Amendment right to the effective assistance of counsel and that jurists of reason could debate the Court's ruling on whether the claims relate back to the original motion. Thus, the Court issues a certificate of appealability with respect to the ineffective assistance of counsel claims based on counsel's failure to object to the § 851 enhancement on the basis that Coleman's Illinois convictions did not qualify as felony drug offenses and failure to pursue plea negotiations without the § 851 enhancement.

## CONCLUSION

Accordingly, Petitioner Frederick J. Coleman's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 1, is DENIED. His motion for status, ECF No. 11, is MOOT. His motion to amend, ECF No. 12, is DENIED, and the motion to provide supplemental authorities in support of that motion, ECF No. 15, is therefore MOOT. The Clerk is directed to enter judgment and close the case.

Entered this 7th day of March, 2022.

s/ Sara Darrow<br>
SARA DARROW<br>
CHIEF UNITED STATES DISTRICT JUDGE